*1009
 
 OPINION
 

 By the Court,
 

 Springer, J.:
 

 This is an appeal by two justices’
 
 courts
 
 and by seven individual justices of the peace from a district court judgment against them by which the courts and the justices are enjoined “from failing to hold hearings for tenants after the tenants filed an Affidavit in Opposition to Eviction Notice.”
 

 The oddity of the district court’s exercising its equitable jurisdiction to
 
 enjoin
 
 inferior courts and judicial officers and to order that these courts not “fail” to hold certain kinds of hearings can be explained by saying that, at the time the injunction was issued, the aggrieved tenants had no recourse to a direct appeal to the district court from the justices’ courts; and the tenants had to challenge collaterally the justices’ courts’ “failing to hold hearings for tenants.” Rather than pursuing the expected remedies of prohibition or mandamus, the aggrieved tenants chose the equitable remedy of injunction; and, since the form of remedy is not challenged by the appellant justices’ courts or the justices, we will act in the assumption that the parties are properly before this court on a review of the judgments of the district court.
 

 
 *1010
 
 The district court: (1) declared unconstitutional the justices’ court rule (JCRCP 106) which denies the right of appeal from justices’ courts to district courts to tenants who are subjected to being evicted under summary eviction proceedings; (2) declared the summary eviction statute (NRS 40.253) to be unconstitutional; (3) enjoined the named courts and jurists to hold hearings in all cases in which tenants file an affidavit in opposition to the eviction proceedings; and (4) ordered that the courts and the individual justices pay the respondents/tenants attorneys’ fees in the sum of $18,693.50. We hold that the district court was correct in declaring JCRCP 106 unconstitutional, but that it erred in declaring NRS 40.253 unconstitutional, erred in ordering that hearings must be held in all cases in which an opposition affidavit is filed by a tenant, and erred in ordering the courts and justices to pay an $18,693.50 attorneys’ fee.
 

 CONSTITUTIONALITY OF JCRCP 106
 

 JCRCP 106 provides that “[tjhere shall be no appeal from an order of summary eviction.” Although this court ill-advisedly approved the issuance of this rule, it is quite clear that tenants who are subject to being summarily thrown out of their homes by eviction orders issued by justices’ courts cannot be discriminated against by denying them the right to appeal. If, for example, respondents Peters, who rightly refused to pay their rent because their roof was leaking, had (like all other aggrieved parties in justice’s court proceedings) been able to
 
 appeal
 
 the justice’s court’s improper order of summary eviction, it appears highly probable that the district court would have seen the error of the justice’s court in the Peters case and corrected it. In any event, had it not been for JCRCP 106, the justices’ court errors complained of in this case could have been corrected through the normal appellate process; and all of the class action proceedings and constitutional challenges would not have reached the attention of either the district court or this court.
 
 [1]
 

 JCRCP 106 is violative of the Nevada Constitution for two
 
 *1011
 
 reasons. The first reason is that article 6, section 6, provides that district courts have “final appellate jurisdiction in cases arising in Justices Courts.” This means what it says. It does not say “except in cases in which justices courts are summarily evicting tenants from their homes.” The Nevada Constitution proclaims that district courts have final appellate jurisdiction in
 
 all
 
 cases arising injustices’ courts,
 
 including
 
 summary eviction cases.
 

 JCRCP 106 is also violative of article 4, section 21, which provides that “all laws shall be general and of uniform operation throughout the State.” There is no reason why parties to landlord-tenant lawsuits should be denied the right of appeal, while all other justices’ courts’ litigants are allowed to exercise this right. Henceforth, tenants who have been summarily evicted from their homes by order of a justice’s court, will have the right of direct appeal to the district court in order to seek correction of any erroneous judgments that might have been issued by a justice’s court.
 

 CONSTITUTIONALITY OF NRS 40.253
 

 A tenant has a “right to contest” summary eviction proceedings under NRS 40.253. When a landlord claims that a tenant is “in default in payment of the rent,” the summary eviction statute permits the landlord to serve a five-day “notice in writing” upon a tenant “requiring in the alternative the payment of the rent or the surrender of the premises.” A tenant’s “noncompliance with the notice” authorizes the landlord to “apply by affidavit” for an “order directing the sheriff or constable of the county to remove the tenant within 24 hours after receipt of the order.”
 

 The landlord’s notice to quit must “advise the tenant of his right to contest the matter by filing ... an affidavit with the court . . . stating that he has tendered payment or is not in default in the payment of the rent.” The filing of such an affidavit of tender or non-default forestalls the eviction proceedings, and the landlord is forbidden to “provide for nonadmittance of the tenant to the premises by locking or otherwise.” When a tenant “contests” an eviction proceeding by filing of the prescribed affidavit, the court “shall hold a hearing ... to determine the truthfulness and sufficiency of any affidavit or notice” provided for in the statute.
 

 NRS 40.253 is quite simple and quite adequate for its purpose. It is not, as contended by respondents and ruled by the district court, “unconstitutional.” Tenants who are subject to eviction proceedings must be given proper notice and an opportunity to be heard if they choose to contest the landlords’ allegations of “default in payment of rent.” All the statute requires tenants to do in order to forestall summary eviction proceedings is to file an
 
 *1012
 
 affidavit stating why it is that they are not “in default in the payment of the rent”; and by doing this they can stop all eviction proceedings and entitle themselves to a hearing “to determine the truth and sufficiency of any affidavit . In the case at hand, for example, respondent Debra Peters filed a timely affidavit stating that she did “not owe the rent” (was not “in default in the payment of rent”) because she had “been unable to use one bedroom due to the ceiling leaking” and because of other conditions which made the premises uninhabitable. The filing of this affidavit was in clear compliance with the statute; and Ms. Peters, without question, had properly contested the eviction proceedings and was entitled to a hearing to determine the truthfulness and sufficiency of her affidavit. The justice’s court refused to grant the hearing required by the statute and entered an order of summary eviction without permitting Ms. Peters to “contest” the matter. This was plain error on the part of the justice’s court and should have been subject to correction on appeal to the district court. The grievances of the tenants in this case arise out of the erroneous misapplication of NRS 40.253 rather than on the supposed unconstitutionality of the statute.
 

 If tenants request a hearing in the manner provided by NRS 40.253, they are entitled to a hearing before they can be summarily evicted. Tenants point out in their brief that the “courts have long held that a pre-deprivation hearing must be held after being requested.” This is a true statement, but it should be pointed out that “requested” means requested in the manner set out in the statute, that is to say, by filing an affidavit of non-default, averring either that tender has been made or that the tenant is “not in default in the payment of rent.” Ordinarily, the only issue before the justice’s court in these matters is whether the tenant is in default in payment of rent. If this issue is not raised and brought before the court in some manner, there is no issue to be heard. For example, one of the tenants in this case presented as a “defense,” the proposition that “my daughter needed a wheelchair and medication . . . and I was unable to pay Dec/Jan rent. My daughter did not get her Sammy Card until the middle of Jan. We can pay our rent up sometime this month. I just can’t say what day.” As touching as this tenant’s plea may be, it does not offer to the court any subject matter upon which it could properly decide, after a hearing, that the tenant was not in default in the payment of rent. The same tenant did, however, state in her affidavit that “she was not in default in the payment of rent because . . . [oí] the landlord’s inclusion of late charges.” Under this claim the tenant raised a disputed issue as to the amount of rent due and was entitled to a hearing. The justice’s court erred in not giving her one.
 

 
 *1013
 
 In Adams v. Sanso Investment Co., 376 F. Supp. 61, 67 (D. Nev. 1974), after giving due consideration to Fuentes v. Shevin, 407 U. S. 67 (1972), the Nevada federal district court declined to "decide whether the requirement of a preliminary showing by affidavit is an unconstitutional restriction on the right to a hearing in an unlawful detainer action." It does not appear to us that requiring a tenant simply to state, as a condition to being granted a hearing, that he or she is not in default of payment of rent, is an unconstitutional restriction on the right to hearing in an unlawful detainer action. If this were not the case, the word would soon go out that all a defaulting tenant had to do to keep from being summarily evicted was to file a paper saying: "I want a hearing." Under these circumstances the summary eviction statute would lose its intended and justifiable purpose. A judicial hearing is for the purpose of aiding in the decision of a justiciable issue. If there is no justiciable issue presented in a summary eviction proceeding (namely, whether there is default in the payment of rent), there is nothing to hear. It is not unreasonable to require a tenant to raise a justiciable issue as a condition to being granted a hearing.
 

 NRS 40.253 provides for a hearing under proper circumstances and is not unconstitutional.
 

 PROPRIETY OF ENJOINING JUSTICES' COURTS' NOT TO "FAIL[] TO HOLD HEARINGS" AFTER FILING OF "OPPOSITION TO EVICTION NOTICE"
 

 It appears that the injunction issued by the district court requires justice's courts to hold a hearing in every case in which a tenant files an affidavit in opposition to the eviction proceedings. Such an injunction cannot be sustained because it is quite possible for a tenant to file an affidavit that does not comply with the statutory requirements imposed upon a tenant who "contests" a summary eviction proceeding. Such a tenant is not entitled to a hearing. A tenant has the right to a hearing "to determine the truthfulness and sufficiency" of the affidavit in opposition only under the circumstances provided in the statute. If the affidavit is insufficient on its face, there is no need to have a hearing to determine its truthfulness. For example, if all a contesting affidavit averred was that "We can pay our rent up sometime this month, I just can't say what day," such an affidavit is facially insufficient and does not entitle the affiant to a hearing under NRS 40.253. To abide by this statute a tenant must, as explained above, make some kind of sworn statement showing that he or she is "not in default in payment of rent." This means timely tender or payment of rent or some recognized legal excuse, such as the
 
 *1014
 
 Peters' not being in default because the roof of the rented premises was leaking.
 

 The injunction ordering, in effect, that a hearing must be held any time that any form of "Affidavit in Opposition to an Eviction Notice" is filed is too broad; and it was error for the trial court to issue such an injunction.
 

 ATTORNEYS' FEES
 

 The judgment awarding fees in this case imposes upon two justices' courts and seven justices of the peace an obligation to pay to the tenants' attorneys the sum of $18,693.50. This judgment does present a problem when we start to think about how these public officials and two courts of law might go about allocating the obligation of $18,693.50. It would not appear that the courts themselves are subject to execution process; and, therefore, the fee, if it were going to be paid, would have to be paid by the individual justices, who would have to pay, if the matter were handled fairly, $2,670.50 each.
 

 The justices' judgment obligation to pay attorneys' fees is based (1) on their having followed a procedural rule (JCRCP 106) enacted by this court and (2) on their having made several erroneous judicial decisions. We hesitate to get into the thorny problems presented by this judgment, problems relating to execution upon public property, relating to official immunity and judicial immunity and some other similar problems that attend the enforcement of such a judgment. Fortunately, we do not have to deal with these problems because there are other less complicated reasons for reversing the attorneys' fees judgment.
 

 It was not until after judgment that the tenants decided to apply for attorneys' fees. There is no predicate for the granting of attorneys' fees stated in their complaint, and the request for fees is entirely a post-judgment proceeding. After judgment was entered, the tenants presented to the court a motion for "an award of costs and attorney's fees" based on 42 U.S.C. § 1988 (1991). This federal statute permits the state courts to award attorneys fees to successful civil rights litigants in civil rights actions brought in the state courts under § 1983. The cited code provision, section 1988, allows for an award of fees to the "prevailing party" when that party has sued "to enforce a provision of. . 42 uscs §~ 1981-1983."
 

 Even if we were to recognize the tenants as the "prevailing party" in this litigation, it is more than clear that this action was in no way designed or pleaded "to enforce a provision of. . . 42 USCS §~ 1981-1983."
 

 In their points and authorities in support of their application for
 
 *1015
 
 attorney’s fees the tenants agree that “[i]n order to state a claim under § 1983, Plaintiffs must allege a person has deprived him or her of a federal right and the person so depriving acted under color of state law.” In no instance did plaintiff tenants ever “allege [that] a person has deprived him or her of a federal right.” Even if the tenants had included such allegations in their complaint, they would have had to base their claims on privileged judicial decisions coming out of the justices’ courts of Clark County. They could not have done this. Judicial judgments are not made “under color” of state law. They are the law, until disturbed by a judgment of reversal on appeal.
 

 This is not a section 1983 action, and there is no other claim made which would serve as a basis for attorneys’ fees. The $18,693.50 “award” of attorneys fees against the Clark County justices’ courts and their presiding justices is reversed.
 

 CONCLUSION
 

 JCRCP 106 is unconstitutional; consequently, henceforth, judgments of the justices’ courts in summary eviction actions will be appealable to the district court. NRS 40.253 is constitutional; and insofar as the trial court’s judgment intimates that the federal and Nevada constitutions require “pre-deprivation” hearings as a condition to
 
 every
 
 summary eviction order, such judgment is of no effect. Tenants are entitled to a pre-deprivation hearing in summary eviction proceedings only when they properly request such a hearing by filing an affidavit with the court showing that the tenant has either “tendered payment or is not in default in payment of rent.” The district court’s award of attorneys’ fees is reversed.
 

 Steffen, C. J., and Young, Shearing, and Rose, JJ., concur.
 

 [1]
 

 We are advised that the justices of the peace here involved had adopted some sort of “policy” by which they had agreed among themselves that in future cases they planned to deny hearings under certain circumstances and to grant hearings under other circumstances. It is a bit untoward for judges to announce in advance how they intend to decide certain cases; still, aside from this, whether appellant justices did or did not have an agreed-upon “policy” in summary eviction cases, each case must be decided on its own merits, and, if decided erroneously, is subject to correction on appeal. Consequently, if tenants were being improperly denied hearings (as they were) this is a matter that could have been addressed, by direct appeal, on a case by case basis, had it not been for JCRCP 106, which precluded appeal.